# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **MIDSOUTH SB III, LLC** * | |
| * | **CIVIL CASE NO.: _____** |
| **VERSUS** * | |
| * | **DIV. "\_\_;" SEC. "\_\_"** |
| **MALL OF LOUISIANA, LLC,** * | |
| **GENERAL GROWTH** * | **JUDGE: _____** |
| **PROPERTIES, INC., AKA** * | |
| **GENERAL GROWTH SERVICES,** * | |
| **INC. OR GENERAL GROWTH** * | |
| **MANAGEMENT, INC., AND** * | |
| **BROOKFIELD PROPERTIES** * | |
| **RETAIL INC.** | |

## COMPLAINT

COMES NOW Plaintiff Midsouth SB III, LLC and brings this action against Defendants Mall of Louisiana, LLC, General Growth Properties, Inc. (also known as General Growth Services, Inc. and/or General Growth Management, Inc.), and Brookfield Properties Retail Inc., stating as follows:

## Jurisdiction

1. This Court has jurisdiction over these proceedings pursuant to the provisions of 28 U.S.C. §1332(a)(1) because there is complete diversity of citizenship between the parties to this action, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

## Venue

2. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to this claim occurred in this district. Further, a substantial part of the property that is the subject of this action is situated in this district.

## The Parties

3. Plaintiff Midsouth SB III, LLC (hereinafter "Midsouth" or "Plaintiff") is a limited liability company organized under the laws of the State of Mississippi with its principal place of business located in Mississippi. Its members are Mississippi residents.

4. Defendant Mall of Louisiana, LLC (hereinafter "Mall of Louisiana" or "Defendant") is a limited liability company organized and existing under the laws of Delaware with its principal place of business located in Illinois. Upon information and belief, its members are Illinois residents and Mall of Louisiana may be served with process through its registered agent: Corporation Service Company, 501 Louisiana Avenue, Baton Rouge, Louisiana 70802.

5. Defendant General Growth Properties, Inc. (hereinafter "General Growth" or "Defendant"), which may also be referenced or doing business as General Growth Services, Inc. or General Growth Management, Inc., is a corporation organized and existing under the laws of Delaware with its principal place of business located in Illinois. Upon information and belief, its members are Illinois residents, and General Growth may be served with process through its registered agent: Corporation Service Company, 501 Louisiana Avenue, Baton Rouge, Louisiana 70802.

6. Defendant Brookfield Properties Retail, Inc. (hereinafter "Brookfield" or "Defendant") is a corporation organized under the laws of the State of Delaware with its principal place of business located in Illinois. Upon information and belief, its members are Illinois residents, and Brookfield may be served with process through its registered agent: Corporation Service Company, 501 Louisiana Avenue, Baton Rouge, Louisiana, 70802. Upon information and belief, Brookfield Properties Retail, Inc. (hereinafter "Brookfield") is the

owner/operator of Defendant Mall of Louisiana, the successor corporation to Defendant General Growth (CGP), and the (indirect) employer of Martin L. Sackett.

**Factual Background**

7. In 2016, Plaintiff Midsouth hired a real estate salesperson, Chris Jacob (hereinafter "Jacob"), to broker a potential lease by Midsouth of a retail space in the food court of the Mall of Louisiana located at 6401 Bluebonnet Boulevard, Baton Rouge, Louisiana ("Food Court Space") from Defendant Mall of Louisiana, the Landlord. Plaintiff Midsouth was considering the profitability of a Smashburger franchise being located in the Food Court Space.

8. While negotiating the terms of the Food Court Space in 2016, Jacob personally communicated with Martin L. Sackett (hereinafter "Sackett"), who at the time was the Senior Director of Leasing for Defendant General Growth. At all times, Sackett and General Growth represented the Landlord, Defendant Mall of Louisiana, and were responsible for leasing the Food Court Space. Further, Defendant Brookfield is believed to be the indirect employer of Sackett.

9. Throughout the course of negotiations, Mr. Jacob requested from Sackett and General Growth various information relative to the Landlord's other existing Mall of Louisiana tenants and food vendors in the Food Court Space. Sackett provided this information to Mr. Jacob, and Mr. Jacob provided this information to Midsouth.

10. On or around September 28, 2016, Sackett provided Mr. Jacob with information Sackett represented as average overall Mall of Louisiana sales per square foot and the approximate sale volume amounts (for a rolling one-year period through August 2016) for several of the

then-existing food vendor tenants in the Mall of Louisiana. These representations, which were represented by Sackett to be truthful and accurate, were as follows:

- Average Mall Sales: $620/ per square foot
- Chick-fil-A: $2,400,000
- Great Wraps: $650,000
- Izzo's Illegal Burrito: $1,000,000
- Mandarin Express: $1,600,000
- Raising Cane's: $2,000,000
- Sarku Japan: $900,000
- ==Villa Pizza: $940,000==
- Charley's Grilled Subs: $1,400,000
- Marble Slab: $550,000
- Smoothie King: $670,000
- Arzi's (to be replaced by Biblos): $613,000
- BJ's Brewhouse (outside mall): $4,700,000
- Red Robin: $3,200,000

11. On September 28, 2016, Mr. Jacob conveyed the representations listed in paragraph 12, above, to Plaintiff Midsouth, along with average utility costs per square foot for Defendant Mall of Louisiana's various food vendor tenants.

12. The subject Food Court Space being considered by Plaintiff was located next to the Villa Pizza restaurant, therefore, Defendants' representations regarding the Villa Pizza restaurant were of particular significance to Plaintiff's determination whether to enter into a lease agreement with Defendants and whether to enter into a franchise agreement with Smashburger. Plaintiff intended to build out the Food Court Space for the Smashburger franchise to operate.

13. Based upon Defendants' average overall Mall of Louisiana sales per square foot figures, the above-referenced approximate sale volume amounts (especially as they related to Villa Pizza), and the average utility costs per square foot for food vendor tenants, Plaintiff made the decision to enter into a lease with Defendants for the Food Court Space in the Mall of

Louisiana and to obtain a Smashburger franchise. The final lease for the Food Court Space in the Mall of Louisiana was executed on or about June 29, 2017.

14. Upon information and belief, the numbers regarding the sale volume amounts provided to Plaintiff by Defendants, and particularly the $940,000.00 figure regarding Villa Pizza's sales, were grossly inflated.

15. Upon information and belief, Defendants knew that the numbers regarding the sale volume amounts, and particularly the $940,000.00 figure regarding Villa Pizza's sales, were grossly inflated. Defendants knew the true sale volume amounts but chose to omit this information in its representation to Plaintiff.

16. Despite knowledge of these inflated figures that had been provided to Plaintiff and Jacob, and the knowledge of the influence these figures would have on Plaintiff's decision to enter into a leasing agreement, Defendants did nothing whatsoever with this knowledge and failed to disclose at any point to Plaintiff or Plaintiff's Jacob that the 2016 sale volume amount representations were inaccurate, inflated, or improper.

17. Had any of the Defendants disclosed to Plaintiff or Plaintiff's Jacob that any of the 2016 sale volume amount representations were inaccurate, inflated, or improper, or had Defendants disclosed the true sale volume amounts to Plaintiff, Plaintiff would have not entered into the lease agreement for the Food Court Space in the Mall of Louisiana in June of 2017.

18. By extension, had such disclosures been made, Plaintiff would have not entered into a franchise agreement with Smashburger for the proposed Mall of Louisiana location and would not have built out a space for the Smashburger franchise to operate within the Food Court Space.

19. It was not until April or May of 2018 when Plaintiff, after a conversation with a representative of its Food Court Space neighbor, Villa Pizza, first suspected there was anything inaccurate, inflated, or improper with Defendants' representations of the 2016 sale volume amounts.

20. In the following weeks, Plaintiff corresponded with Jacob T. Wilson, a Senior General Manager of Defendant Mall of Louisiana. Mr. Wilson provided Plaintiff with 2017 sale volume amounts for several food vendors listed in the 2016 sale volume amount representations, but these 2017 figures varied from the 2016 figures by hundreds of thousands of dollars. Specifically, the 2016 sale volume amount for Villa Pizza, at $940,000.00, was significantly greater than its 2017 sale volume amount, $500,000.00 – a considerable difference of $440,000.00.

21. When asked to provide the 2016 sale volume amount representations for comparison's sake, Defendants, aware of their previous misrepresentation, refused.

**Cause of Action for Rescission of Contract for Fraud and Damages**

22. Plaintiff incorporates by reference the allegations of paragraphs 8-21.

23. Plaintiff was induced to enter into a lease agreement for the Food Court Space by intentional misrepresentations made by all Defendants and their representatives regarding the 2016 sale volume amounts for then-existing Mall of Louisiana tenants and food vendors in the Food Court Space.

24. Defendants intended to obtain an unjust advantage over Plaintiff in the form of securing rent payments through this intentional misrepresentation and the omission of the truthful 2016 sale volume amounts.

25. Defendants, because of their positions as Landlord/property management/leasing agents for all Mall of Louisiana tenants/food vendors, were uniquely positioned to be aware of the truthful and accurate 2016 sale volume amounts for its then-existing Mall of Louisiana tenants and food vendors in the Food Court Space. Because of their unique position, Defendants knew or should have known of the falsity of the information of 2016 sale volume amounts provided to Plaintiff and Plaintiff's Jacob. Because of Defendants' unique position, Plaintiff could not have ascertained the truthful amounts of the 2016 sale volume figures without difficulty, inconvenience, or special skill.

26. Had the inaccurate, inflated, or improper nature of the 2016 sale volume amount representations been disclosed to Plaintiff or Jacob, or had Defendants not omitted the truthful amounts, Plaintiff would not have entered into a lease with Defendants for the Food Court Space in the Mall of Louisiana, and by extension, would not have located a Smashburger franchise in the Mall of Louisiana space.

27. Accordingly, because of Defendants' fraudulent inducement, Plaintiff is entitled to rescission of its June 2017 lease for the Food Court Space in the Mall of Louisiana.

28. Plaintiff is likewise entitled to an award of damages, in an amount to be determined at trial, from Defendants for all damages suffered as a result of this fraud, including attorneys' fees. Plaintiff's damages include, but are not limited to, lease payments, expenses associated with the Food Court Lease Space and construction for outfitting the Smashburger franchise, and operating losses since June 29, 2017.

### Alternative Cause of Action for Rescission of Contract for Error

29. Plaintiff incorporates by reference the allegations of paragraphs 8-28.

30. Alternately, Plaintiff erroneously believed that there was nothing inaccurate, inflated, or improper about the 2016 sale volume amounts for its then-existing Mall of Louisiana tenants and food vendors in the Food Court Space.

31. Had the inaccurate, inflated, or improper nature of the 2016 sale volume amount representations been known by Plaintiff or Jacob, Plaintiff would not have entered into a lease with Defendants for the Food Court Space in the Mall of Louisiana, and by extension, would not have located a Smashburger franchise in the Mall of Louisiana space.

32. Defendants knew or should have known that Plaintiff would not have entered into a lease with Defendants for the Food Court Space in the Mall of Louisiana, and by extension, would not have located a Smashburger franchise in the Mall of Louisiana space had Plaintiff known that the 2016 sale volume amounts were inaccurate, inflated, or improper.

33. Because of these errors and/or mistakes, Plaintiff is entitled to rescission of its June 2017 lease for the Food Court Space in the Mall of Louisiana.

### Damages

34. Plaintiff's damages caused by Defendants' fraud and/or error include, but are not limited to, lease payments, expenses associated with the Food Court Lease Space and construction for outfitting the Smashburger franchise, and operating losses since June 29, 2017.

### Request for Trial by Jury

35. Plaintiff requests a trial by jury on all issues presented herein.

WHEREFORE, PREMISES CONSIDERED, Plaintiff files this civil action against the Defendants, Mall of Louisiana, LLC, General Growth Properties, Inc. (also known as General

Growth Services, Inc. and/or General Growth Management, Inc.), and Brookfield Properties Retail Inc., and demands judgment herein in favor of Plaintiff for all damages to which it is entitled along with legal interest, therein from the date of judicial demand until paid, for attorney's fees, all costs of these proceedings, and for all general and equitable relief as the law may allow.

        Respectfully submitted,

        **MIDSOUTH SB III, LLC**

        PITTMAN, ROBERTS & WELSH, PLLC


        BY:   */s/Ann R. Chandler*
                ANN R. CHANDLER


**OF COUNSEL:**
ANN R. CHANDLER, LA BAR NO. 30953
PITTMAN, ROBERTS & WELSH, PLLC
410 SOUTH PRESIDENT STREET
POST OFFICE BOX 22985
JACKSON, MISSISSIPPI 39225-2985
TELEPHONE: (601) 948-6200
FAX: (601) 948-6187